1

2

3

4                    UNITED STATES DISTRICT COURT

5                          DISTRICT OF NEVADA

6                                  * * *

7   CORISSA JONES, on behalf of herself and        Case No. 2:15-cv-01382-RFB-NJK
    on behalf of all others similarly situated,
8                                                   **ORDER**
                        Plaintiff,
9
          v.
10
    SHAC LLC, D/B/A SAPPHIRE
11  GENTLEMEN'S CLUB; SHAC MT. LLC;
    DAVID MICHAEL TALLA; and PETER
12  FEINSTEIN,

13                      Defendants.

14

15      **I.      INTRODUCTION**

16           This action is brought pursuant to the Fair Labor Standards Act ("FLSA") by Plaintiffs, a

17   class of exotic dancers who worked at Sapphire Gentlemen's Club during the class period.

18   Plaintiffs allege that Defendants—Shac, LLC, d/b/a Sapphire Gentlemen's Club; Shac Mt. LLC;

19   David Michael Talla; and Peter Feinstein—misclassified them as independent contractors and

20   therefore violated the FLSA by failing to compensate them for hours worked.

21           Before the Court are several motions: Defendants' Motion to Dismiss Opt-In Plaintiffs

22   Pursuant to FRCP 12(b)(1) (ECF No. 92); Plaintiffs' Motion to Compel Deposition of Tami

23   Cowden (ECF No. 156); Plaintiffs' Motion to Compel Against Defendant Shac, LLC (ECF No.

24   159); Plaintiffs' Motion to File Supplemental and Recently Discovered Evidence (ECF No. 186);

25   Plaintiffs' Motion for Partial Summary Judgment on Liability (ECF No. 189); Plaintiffs' Motion

26   for Partial Summary Judgment on Individual Liability of Defendants Peter Feinstein and David

27   Michael Talla (ECF No. 190); Plaintiffs' Motion for Partial Summary Judgment on Willfulness

28   ///

and Liquidated Damages (ECF No. 191); and Intervenor-Cross Claimants' Motion to Intervene (ECF No. 226).

## II.   FACTUAL BACKGROUND

### a.  Undisputed Facts

The Court finds the following facts to be undisputed.

Plaintiffs were employed as exotic dancers at Defendants' dance club, which advertises and bills itself as "the world's largest strip club."

Defendant Shac Mt. LLC is the 100% member of Defendant Shac, LLC, which operates as the Sapphire Gentlemen's Club.  At all relevant times, Defendant Peter Feinstein was the manager of the club and Defendant David Michael Talla was the owner of the club.

Plaintiffs were classified as independent contractors.  Defendants did not provide Plaintiffs with wages or any other compensation.

Plaintiffs were required to sign in and sign out to work in the club.  Plaintiffs paid a house fee, a marketing fee, and a DJ fee for each sign-in.  Plaintiffs paid an additional fee if they declined to dance on-stage.  Defendants set a minimum price that Plaintiffs were required to charge for dances.  Defendants received a 10% cut of any payments made with "dance dollars," though Plaintiffs could decline to dance for any customer intending to pay with dance dollars.

Defendants distributed written rules to a number of Plaintiffs when they first contracted to perform.  Defendants posted these rules in the club.  The rules have several tips and guidelines regarding dancing and conduct, such as requiring toplessness after the first song, requiring dancing and no standing while on stage, and checking in and out with the DJ.  ECF No. 194-6.  The rules include appearance-relate prohibitions on oil, body glitter, self-tanning lotion, heels under four inches, and boots.  The rules state that shifts are six hours and that dancers may not prepare to leave early without a manger's approval.  According to the express language of the document, "adherence to these guidelines is mandatory."  Penalties include fines ranging from $40 to $150 and automatic termination.  The rules state that dancers will be automatically terminated for offenses such as failing to clock in or declining to order a drink.  Defendant Feinstein, the manager

of Sapphire, testified that all dancers were required to read and acknowledge that they would comply with the rules when they first contracted to dance at the club, that the club expects dancers to comply with the rules, and that the club can terminate any dancers who violate the rules. ECF No. 192-1 at 17.

Defendants invested significantly in the club. Defendants provided financially for marketing, overhead costs, lights, and music. Plaintiffs paid for their costumes, cosmetics, and any travel expenses.

Defendants did not require Plaintiffs to have prior experience, formal dance training, or references.

In 2009, a lawsuit was filed against Shac, LLC in Clark County District Court which alleged that Sapphire misclassified its exotic dancers as independent contractors under Nevada wage laws. The Clark County District Court issued an August 18, 2011 decision that the dancers were not employees under Nevada law. On appeal, the Nevada Supreme Court issued a contrary October 30, 2014 decision concluding that the dancers were independent contractors pursuant to state law. Terry v. Sapphire Gentlemen's Club, 336 P.3d 951 (Nev. 2014). The Nevada Supreme Court remanded the matter to state court for further proceedings, and a settlement between the parties was finalized on July 6, 2016. Defendants did not alter the independent contractor classification of dancers at any time during or following the Terry litigation.

### a. Disputed Facts

The Court finds that the parties dispute whether the rules promulgated by the club were in fact enforced. Plaintiffs allege that they were closely monitored at work and that the written rules were enforced. Defendants characterize the rules as "attention getting – but empty threats." ECF No. 215 at 14. They allege that the six-hour rule in particular is "illusory" and provide evidence of several Plaintiffs working shifts under six hours. Id. at 10, 20, 24. They further allege that no dancer has ever been automatically terminated for a rule violation.


### III.    PROCEDURAL BACKGROUND

Plaintiff filed the Complaint on July 21, 2015, alleging (1) failure to pay overtime wages

in violation of the FLSA and (2) failure to pay minimum wage in violation of the FLSA. ECF No. 1. Defendants filed an Answer with five counterclaims on October 5, 2015. ECF No. 20. The Court dismissed these five counterclaims at a hearing on February 8, 2018. ECF No. 85.

On November 25, 2015, the Court granting a stipulation staying the case pending settlement proceedings. ECF No. 30. On January 27, 2017, the Court granted a stipulation and order conditionally certifying the case as a FLSA class action and agreeing on the notice to be sent to class members. ECF No. 49. The parties also agreed to stay the case during the notice period, lasting 60 days from the commencement of mailing of the notices, and for an additional 60 days after the close of the notice period. Id. From April 2017 to June 2017, opt-in Plaintiffs filed a number of notices of consent to join the class.

On June 11, 2018, Defendants filed three motions to dismiss: Motion to Dismiss Opt-In Plaintiffs Pursuant to Rule 12(b)(1) (ECF No. 92); Motion to Dismiss 110 Opt-In Plaintiffs and All Claims Pre-October 31, 2014 as Barred by Res Judicata (ECF No. 93); Motion to Dismiss Opt-In Plaintiffs' Claim for Fees and Fines (ECF No. 94). These motions were fully briefed by July 22, 2018. ECF Nos. 100, 101, 104, 105, 111, 112, 113.

Discovery closed on October 30, 2018, though several discovery-related motions remained pending. ECF No. 147.

The Court held a hearing on November 5, 2018. ECF No. 167. The Court denied the Motion to Dismiss 110 Opt-In Plaintiffs and All Claims Pre-October 31, 2014 as Barred by Res Judicata (ECF No. 93) and the Motion to Dismiss Opt-In Plaintiffs' Claim for Fees and Fines (ECF No. 94) without prejudice. The Court took the remaining Motion to Dismiss (ECF No. 92) under submission. The Court handled certain outstanding discovery motions (ECF Nos. 118, 132, 150, 152, 153), permitted three additional depositions, and stayed further discovery. The Court also unreferred, but did not decide, two motions to compel (ECF No. 156, 159).

On January 10, 2019, Plaintiffs filed the instant Motion for Leave to File Supplemental and Recently Discovered Evidence in Relation to Defendants' Motion to Dismiss Opt-In Plaintiffs Pursuant to FRCP 12(b)(1). ECF No. 186. Defendants responded on January 24, 2019 and Plaintiffs replied on January 31, 2019. ECF Nos. 187, 188.

On February 4, 2019, Plaintiffs filed the instant three motions for partial summary judgment: Plaintiffs' Motion for Partial Summary Judgment on Liability (ECF No. 189); Plaintiffs' Motion for Partial Summary Judgment on Individual Liability of Defendants Peter Feinstein and David Michael Talla (ECF No. 190); and Plaintiffs' Motion for Partial Summary Judgment on Willfulness and Liquidated Damages (ECF No. 191). These motions were fully briefed by April 26, 2019. ECF Nos. 204, 205, 215, 220, 221, 224.

Ashley Amos, Jamie Asher, Samantha Baraldi, Nicole Beckwith, Samantha Christian, Oana E. Ciolacu, Cara DeBona, Amphayvon Dythavon, Susana Faas, Tiffany Francis, Linsey Gile, Unique Hairston, Markie Henderson, Sarah Henscheid, Samantha Hopkins, Jenny Knaus, Rinrada Lishnoff, Erika Luevano, Arza Mubarispur, Allison Morton, Tasha Pablo, Kamila Persse, Brandy Pisano, Leslie Scott, Brenna Sharp, Kayla Szabo, Cara Thornberry, Irina Tugui, Bonnie Turechek, and Adrienne Zager ("Intervenors") filed the instant Motion to Intervene on May 7, 2019. ECF No. 226. Plaintiffs responded on May 21, 2019 and Intervenors replied on May 31, 2019. ECF Nos. 230, 234.

On July 31, 2019, the Court held a hearing on all pending motions and took the motions under submission. ECF No. 238.

## IV.    LEGAL STANDARD

### a.  Motion to Dismiss (Mandatory Arbitration)

"If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). The Court lacks subject matter jurisdiction to determine matters subject to mandatory arbitration. See Ass'n of Flight Attendants, AFL-CIO v. Horizon Air Indus., Inc., 280 F.3d 901, 903 (9th Cir. 2002).

Under previously binding Ninth Circuit case law, compelled arbitration of employees' concerted legal claims regarding wages, hours, and terms and conditions of employment was not enforceable. Morris v. Ernst & Young, LLP, 834 F.3d 975, 979 (9th Cir. 2016). However, the governing interpretation of the law changed on May 21, 2018, when the Supreme Court held that federal courts must "enforce arbitration agreements according to their terms—including terms

providing for individualized proceedings" in wage and hour actions.  Epic Systems Corp. v. Lewis, 138 S. Ct. 1612, 1619 (2018).

### b.  Motions for Summary Judgment

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); accord Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  When considering the propriety of summary judgment, the court views all facts and draws all inferences in the light most favorable to the nonmoving party.  Gonzalez v. City of Anaheim, 747 F.3d 789, 793 (9th Cir. 2014).  If the movant has carried its burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial."  Scott v. Harris, 550 U.S. 372, 380 (2007) (citation and internal quotation marks omitted) (alteration in original).

### c.  Motions to Compel

Pursuant to Rule 37 of the Federal Rules of Civil Procedure, "[o]n notice to other parties and all affected persons, a party may move for an order compelling disclosure or discovery. The motion must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action."  Fed. R. Civ. P. 37(a)(1).  In relevant part, the rule permits a party to seek an order to compelling production of documents or compelling attendance at a deposition.  Sali v. Corona Reg'l Med. Ctr., 884 F.3d 1218, 1222 (9th Cir. 2018)

### d.  Motion to Intervene

Courts must permit intervention as of right on timely motion for "anyone who: (1) is given an unconditional right to intervene by a federal statute; or (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest."  Fed. R. Civ. P. 24(a).

Rule 24 also provides for permissive intervention. Under Rule 24(b), courts may permit intervention to anyone on timely motion who has a conditional right to intervene under a federal statute or "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1). The decision whether to allow permissive intervention is within the discretion of the district court. Kootenai Tribe of Idaho v. Veneman, 313 F.3d 1094, 1110 (9th Cir. 2002), abrogated on other grounds by Wilderness Soc'y v. U.S. Forest Serv., 630 F.3d 1173, 1178–80 (9th Cir. 2011). Finally, "Rule 24 traditionally receives liberal construction in favor of applicants for intervention. Courts are guided primarily by practical and equitable considerations." Arakaki v. Cayetano, 324 F.3d 1078, 1083 (9th Cir. 2003) (citation omitted).

## V.    DISCUSSION

### a. Motion to Dismiss (Mandatory Arbitration)

The Court first considers Defendants' Motion to Dismiss Opt-In Plaintiffs Pursuant to FRCP 12(b)(1). ECF No. 92. As an initial matter, a Rule 12(b)(1) motion must be filed prior to any responsive pleading. See Aetna Life Ins. Co. v. Alla Med. Servs., Inc., 855 F.2d 1470, 1474 (9th Cir. 1988). In this case, Defendants filed an Answer on October 5, 2012 and filed the instant Motion to Dismiss on June 11, 2018. ECF Nos. 20, 92. However, Defendants never waive this defense, and the Court must dismiss the action at any time it finds that it lacks subject matter jurisdiction. Fed. R. Civ. P. 12(h)(3). Thus, the "untimely [Rule 12(b)(1)] motion simply will be treated as a suggestion that the court lacks jurisdiction." Motions to Dismiss—Lack of Jurisdiction Over the Subject Matter, 5B Fed. Prac. & Proc. Civ. § 1350 (3d ed.).

Defendants argue that a total of 24[1] Plaintiffs (ECF No. 100) have executed agreements requiring mandatory arbitration to resolve any dispute arising out of their performance at Sapphire (ECF No. 92, Exs. B–D) and that this Court therefore lacks subject matter jurisdiction over these Plaintiffs' claims. Plaintiffs do not contest the existence or terms of the agreements. Plaintiffs argue (1) that Defendants have waived their right to compel arbitration and (2) that the arbitration

---

[1] Defendants actually state that the number is 25, but Plaintiffs clarify in their response that Antonia Zemerova and Antonia Zemerove are the same individual.

provision is both procedurally and substantively unconscionable. The Court addresses each argument in turn.

## i. Waiver

Plaintiffs argue that Defendants have waived their right to compel arbitration by knowing about the agreements and pursuing years of federal litigation, prejudicing Plaintiffs via the accumulation of costs. Defendants argue that they did not enforce their right to arbitration earlier because the Supreme Court only recently held that arbitration agreements and class/collective action waivers for claims involving the FLSA are enforceable in Epic Systems Corp., 138 S. Ct. at 1619. Defendants also note that, for the first two years of litigation, the only Plaintiff known to Defendants was named Plaintiff Corissa Jones, who had not executed an arbitration agreement.

"A determination of whether 'the right to compel arbitration has been waived must be conducted in light of the strong federal policy favoring enforcement of arbitration agreements.'" Martin v. Yasuda, 829 F.3d 1118, 1124 (9th Cir. 2016) (quoting Fisher v. A.G. Becker Paribas Inc., 791 F.2d 691, 694 (9th Cir. 1986)). Thus, "any party arguing waiver of arbitration bears a heavy burden of proof." Fisher, 791 F.2d at 694. "A party seeking to prove waiver of a right to arbitration must demonstrate: (1) knowledge of an existing right to compel arbitration; (2) acts inconsistent with that existing right; and (3) prejudice to the party opposing arbitration resulting from such inconsistent acts." Id.

The Court finds that Defendants have not waived their right to compel arbitration. It is reasonable that Defendants would not have known of their existing right to compel arbitration given the rule in Morris, 834 F.3d at 979, which bound until recently. At best, Defendants could have tried to enforce their right despite Morris, but even Plaintiffs acknowledge this would have been an uphill battle. Plaintiffs cannot satisfy their "heavy burden of proof" as to Defendants' knowledge of their right to compel arbitration.

## ii. Conscionability

Plaintiffs next argue that the arbitration provision is (1) procedurally unconscionable because the provision was drafted unilaterally by Defendants and provided in Plaintiffs' new hire packets without opportunity for negotiation or opt-out and (2) substantially unconscionable as to

the 22 Plaintiffs who signed updated agreements after the initiation of the instant suit in July 2015.

Regarding procedural consciousability, Defendants respond that Plaintiffs could have pursued dancing at other venues, that the agreements laid out detailed terms, and that Plaintiffs had the opportunity to ask questions, to have the contracts reviewed, and to revoke the agreement within three days. Regarding substantive consciousability, Defendants respond that the provisions bind both parties to the terms and give both parties the ability to initiate arbitration. Defendants also note that they have been using agreements with arbitration clauses since October 30, 2014 and that the September 2015 revision did not substantively alter their standard arbitration agreement.

"Nevada law requires both procedural and substantive unconscionability to invalidate a contract as unconscionable." U.S. Home Corp. v. Michael Ballesteros Tr., 415 P.3d 32, 40 (Nev. 2018). Procedural unconscionability is found "when a party lacks a meaningful opportunity to agree to the clause terms either because of unequal bargaining power, as in an adhesion contract, or because the clause and its effects are not readily ascertainable upon a review of the contract. Procedural unconscionability often involves the use of fine print or complicated, incomplete or misleading language that fails to inform a reasonable person of the contractual language's consequences." D.R. Horton, Inc. v. Green, 96 P.3d 1159, 1162 (Nev. 2004), overruled in other part by U.S. Home Corp. v. Michael Ballesteros Tr., 415 P.3d 32 (Nev. 2018). "As the Ninth Circuit has recognized, 'substantive unconscionability focuses on the one-sidedness of the contract terms.' . . . The Ninth Circuit held that '[w]here an arbitration agreement is concerned, the agreement is unconscionable unless the arbitration remedy contains a "modicum of bilaterality."'" Id. at 1162–63, 1165 (quoting Ting v. AT & T, 319 F.3d 1126, 1149 (9th Cir. 2003)). For example, in Burch v. Second Judicial Dist. Court of State ex rel. Cty. of Washoe, 49 P.3d 647, 650–51 (Nev. 2002), an arbitration clause was procedurally unconscionable because it was buried in a booklet that the plaintiffs did not have the opportunity to read before closing escrow on their home, and substantively unconscionable because it gave the defendant a unilateral and exclusive right to decide the rules that govern the arbitration and to select the arbitrators.

/ / /

Defendants began using agreements with arbitration clauses on October 30, 2014 – the same date the Nevada Supreme Court issued its decision in the Terry action. Plaintiffs, represented at that time by only Corissa Jones, initiated the present litigation on July 21, 2015. ECF No. 1. Though Defendants revised the arbitration provision on September 28, 2015, the terms remained substantively the same.[2]

The Court finds that the arbitration agreement is not substantively unconscionable under Nevada law. Plaintiffs do not identify any substantive change to the form agreement made by Defendants after initiation of the lawsuit, much less changes that render the agreement substantively unconscionable. Plaintiffs argue that Defendants had a duty to inform incoming employees of initiated federal litigation before signing an arbitration agreement. However, Plaintiffs provide no legal support for such a duty of disclosure, and the Court does not find that any such support exists. Because Plaintiffs must prove both procedural and substantive unconscionability, the Court need not reach the issue of procedural conscionability.

Plaintiffs additionally have filed a Motion for Leave to File Supplemental and Recently Discovered Evidence. ECF No. 186. Plaintiffs seek to file excerpts from opt-in Plaintiff Lenka Waterkotte's deposition conducted on December 20, 2018. Plaintiffs allege that Waterkotte testified that Defendants conditioned her continued employment on the signing of an arbitration agreement and that she was not permitted to retain a copy of the arbitration agreement after it was signed. They allege that Waterkotte further testified that though she already had an employment

_____

[2] Plaintiffs do not identify a relevant difference between the provision in effect from October 2014 to September 2015 and the revised provision. Defendants claim there is no difference. Upon the Court's review, there appear to be two substantive differences, both of which in fact favor Plaintiffs:

- The revised version requires Sapphire to pay all of the arbiter's costs. This change is clearly more favorable to Plaintiffs.
- The revised version removes a provision stating that arbitration must be initiated within one year from the date a claim arose, or arbitration and all other proceedings are forever barred. While favorable to both parties, in the context of this suit, this change favors Plaintiffs because those who signed the revised agreement can still seek arbitration at this time and are not barred by the 1-year deadline.

Compare ECF No. 92, Ex. E, pages 8-10 (revised version) with pages 25-26 (pre-revision version).

contract, she was required to sign a new contract before she was allowed to clock in, and that the new contract was presented minutes before a house fee increase, disincentivizing a thorough review.

The Court will permit Plaintiffs to file the relevant excerpts from Waterkotte's deposition testimony for the purposes of supplementing the record, but the Court finds that the deposition has no impact on its analysis of the Motion to Dismiss discussed above. Plaintiffs' arguments regarding Waterkotte's deposition all inform a determination of potential procedural unconscionability, not substantive. Because Plaintiffs continue to be unable to demonstrate substantive unconscionability, the deposition is not relevant to the Court's determination.

For these reasons, the Court grants Plaintiffs' Motion for Leave to File Supplemental and Recently Discovered Evidence (ECF No. 186) and grants Defendants' Motion to Dismiss Opt-In Plaintiffs Pursuant to Rule 12(b)(1) (ECF No. 92). The Court dismisses all Plaintiffs from this action who signed binding arbitration agreements which strip this Court of jurisdiction.

**b. Motion for Partial Summary Judgment (Liability)**

The Court next addresses Plaintiffs' Motion for Partial Summary Judgment on Liability. ECF No. 189. Plaintiffs seek a finding that they were employees under the FLSA as a matter of law, and that Defendants therefore violated the minimum wage requirements of the FLSA. Plaintiffs argue two theories in support of summary judgment: (1) that the Nevada Supreme Court's <u>Terry</u> decision has issue-preclusive effective as to the employment analysis and (2) that evaluating the undisputed facts under the economic realities test can only support a finding that Plaintiffs were employees. The Court agrees with both theories. The Court finds that <u>Terry</u> is issue preclusive and that, in the alternative, there is no genuine dispute of material fact for trial as to Plaintiffs' status as employees under the economic realities test.

i. <u>Issue Preclusion</u>

Plaintiffs argue that the Nevada Supreme Court's <u>Terry</u> decision has issue-preclusive effect as to the instant determination of whether Plaintiffs are employees under the FLSA. Issue preclusion applies when: "(1) the issue necessarily decided at the previous proceeding is identical to the one which is sought to be relitigated; (2) the first proceeding ended with a final judgment

on the merits; and (3) the party against whom [issue preclusion] is asserted was a party or in privity with a party at the first proceeding." Paulo v. Holder, 669 F.3d 911, 917 (9th Cir. 2011) (alteration in original) (internal citation omitted).

First, the Court finds that the issues decided in Terry were identical. Though Defendants argue that the Terry decision relies on factual findings that predate the instant class period, "a different time period alone does not necessarily preclude application of collateral estoppel." B-S Steel Of Kansas, Inc. v. Texas Indus., Inc., 439 F.3d 653, 663 (10th Cir. 2006) (citing Pignons S.A. de Mecanique v. Polaroid Corp., 701 F.2d 1, 2 (1st Cir. 1983)). The Terry Court found it undisputed that dancers could work any day for a minimum six-hour shift unless they received permission to depart early. Id. at 953, 959. It found that dancers could set prices compliant with the club's required minimum prices. Id. at 953. It found that the club had "house rules," including imposition of appearance-related requirements and a required "house fee" to perform. Id. The Court finds that these facts are similarly undisputed as to the class period in the instant case.

In its analysis under the economic realities test, the Terry Court relied on facts that the Court finds to be undisputed and equally relevant in the instant case. In evaluating control, the Terry Court found that the alleged "choices" given to dancers were in fact a method for Sapphire to heavily monitor their behaviors. Id. at 959. The Terry Court discussed as illusory the "choice" to either dance on-stage or pay a fee and the "choice" to either accept dance dollars at a decreased profit or to risk losing the customer altogether. Id. In evaluating the other factors of the economic realities test, the Terry Court found that the dancers' financial investments were limited compared to Sapphire's, that the dancers' work is itinerant in nature, and that the dancers' work is integral given Sapphire's advertised status as the world's largest strip club. Id. at 959–60. These findings are all entirely consistent with this Court's findings, as detailed above and as discussed further below.

Though Terry's legal conclusion sounded in state law, the issues necessarily decided to preclude a different finding under the FLSA. The Nevada Supreme Court expressly adopted and applied the FLSA's economic realities test to its analysis of the relevant Nevada statutes, with no revisions or caveats. Id. at 958. Though the legal conclusion issued under state law, the relevant

issues are identical because the test applied is identical.  See Kremer v. Chem. Const. Corp., 456 U.S. 461, 479–80 (1982) (holding that a state law judgment barred a federal law claim where the elements of the claims were virtually identical).

Because the Court finds that every fact material to the Terry Court's opinion is equally true and undisputed in the instant case, the Court concludes that the issue of employment decided in Terry is identical to the issue sought to be relitigated.

Second, the Terry proceedings ended with a final judgment on the merits—in this case, a court's approval of the settlement.  See Reyn's Pasta Bella, LLC v. Visa USA, Inc., 442 F.3d 741, 746 (9th Cir. 2006) ("[A]pproval of the settlement constituted a final judgment on the merits."). Moreover, though the Nevada Supreme Court remanded for further proceedings in Terry, the Nevada Supreme Court's 2014 order was itself a final judgment in the context of issue preclusion. For the application of issue preclusion, a final judgment "includes any prior adjudication of an issue in another action that is determined to be sufficiently firm to be accorded conclusive effect." Robi v. Five Platters, Inc., 838 F.2d 318, 327 (9th Cir. 1988) (quoting Restatement (Second) of Judgments § 13 (1982)).  The Nevada Supreme Court firmly and conclusively determined that "based on our review of the totality of the circumstances of the working relationship's economic reality, Sapphire qualifies as an employer."  Terry, 336 P.3d at 960.  The fact that the Nevada legislature altered relevant employment law in 2015 does not impact the finality of the 2014 judgment.  Cf. Robi, 838 F.2d at 327 (stating that appeal of a judgment does not affect the "firmness" of the decision for purposes of issue preclusion).

Third, Shac, LLC was a Defendant in the Terry proceeding, and the Court finds that the other Defendants named in the instant case are in privity with Shac, LLC.  Privity is "a legal conclusion" applicable where a party "represents precisely the same right in respect to the subject matter involved."  United States v. Bhatia, 545 F.3d 757, 759 (9th Cir. 2008).  Privity can "describe various relationships between litigants," Richards v. Jefferson Cty., Ala., 517 U.S. 793, 798 (1996), and applies whenever a relationship is "sufficiently close" to justify the application of preclusion, Bhatia, 545 F.3d at 759.  Shac Mt. LLC is the 100% member of Shac, LLC, which operates as the club that Feinstein manages and Talla owns.  Because all Defendants represent the

same right with respect to Plaintiffs' FLSA claims, and because their relationships to each other are sufficiently close to justify preclusion, the Court finds that Shac Mt. LLC, Feinstein, and Talla are in privity with Shac, LLC for the purposes of issue preclusion.

## ii. Economic Realities Test

In the alternative, the Court finds that Plaintiffs' motion for partial summary judgment resolves in Plaintiffs' favor on its merits. The Court finds no genuine dispute as to any material fact. Pursuant to the economic realities test, Plaintiffs are employees under the FLSA.

The FLSA mandates that every employer pay a minimum wage "to each of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce." 29 U.S.C. § 206(a). The FLSA defines "employer" to include 'any person acting directly or indirectly in the interest of an employer in relation to an employee.'" 29 U.S.C. § 203(d). The definition of "employer" under the FLSA "is not limited by the common law concept of 'employer,' but is to be given an expansive interpretation in order to effectuate the FLSA's broad remedial purposes." Boucher v. Shaw, 572 F.3d 1087, 1090 (9th Cir. 2009).

"The determination of whether an employer-employee relationship exists does not depend on 'isolated factors but rather upon the circumstances of the whole activity.' The touchstone is the 'economic reality' of the relationship." Id. at 1091 (citations omitted). In administering the economic reality test, courts may consider a number of factors, including: "1) the degree of the alleged employer's right to control the manner in which the work is to be performed; 2) the alleged employee's opportunity for profit or loss depending upon his managerial skill; 3) the alleged employee's investment in equipment or materials required for his task, or his employment of helpers; 4) whether the service rendered requires a special skill; 5) the degree of permanence of the working relationship; and 6) whether the service rendered is an integral part of the alleged employer's business." Real v. Driscoll Strawberry Assocs., Inc., 603 F.2d 748, 754 (9th Cir. 1979). This list of factors is not exclusive, nor is any one or more of the factors dispositive. "While these factors provide a useful framework for analysis . . . they are not etched in stone and will not

///

- 14 -

be blindly applied." <u>Hale</u>, 993 F.2d at 1394.  The determination depends "upon the circumstances of the whole activity."  <u>Real</u>, 603 F.2d at 754–55 (citation omitted).

In this case, the Court finds that the undisputed facts, evaluated pursuant to the common factors of economic realities test, could not lead a rational trier of fact to find for Defendants.

### 1. Degree of Control

The Court finds that the rules written, dispersed, and posted by Defendants manifest a high degree of control over Plaintiffs.  The rules delineate requirements for dancers' appearance, including prohibitions on oil, body glitter, self-tanning lotion, heels under four inches, and boots.  They monitor dancers' conduct, such as requiring toplessness after the first song, requiring dancing and no standing while on stage, and checking in and out with the DJ.  The rules state that shifts are six hours and that dancers may not prepare to leave early without a manger's approval.  The rules do not read as mere suggestions.  Rather, the document expressly states that adherence to all rules is mandatory, with specific penalties delineated.

The existence and content of the rules is undisputed and apparent; only the degree to which these rules were enforced and penalties imposed remains disputed between the parties.  The Court does not find this dispute to be material.  The fact that Defendants may have exercised leniency or enforced the rules unevenly does not alter the degree of control Defendants possessed.  It remained exclusively Defendants' choice (1) whether or not to monitor compliance with these express requirements and (2) whether or not to enforce the threatened repercussions for rule violations.  To the extent Plaintiffs did not comply with these rules, they risked consequences that Defendant alone possessed the power to impose. If the Court were to accept Defendants' argument it would essentially be ceding in this case (and every case) the decision on the degree of control analysis to the putative employers who could simply overcome this inquiry by submitting an affidavit of a manager or supervisor. Such an approach is inconsistent with the remedial nature of the FLSA and the requirement to construe the definition of employer under the FLSA broadly.  <u>Boucher</u>, 572 F.3d at 1090.

Courts in other circuits have found that a club's written rules imposing similar behavioral requirements on exotic dancers constituted a high degree of control.  <u>McFeeley v. Jackson St.</u>

Entm't, LLC, 825 F.3d 235, 242 (4th Cir. 2016); Reich v. Circle C. Investments, Inc., 998 F.2d 324, 327 (5th Cir. 1993). For example, in McFeeley, the Fourth Circuit found that similar guidelines were a "plain manifestation[ ]" of control, even though "defendants claimed not to enforce the rules," because "[a]n employer's 'potential power' to enforce its rules and manage dancers' conduct is a form of control." 825 F.3d at 241–42 (citation omitted). The Court agrees with this analysis.

### 2. *Opportunity for Profit or Loss & Relative Investment*

The Court finds that Plaintiffs' opportunity for profit or loss was highly dependent on Defendants and that Plaintiffs' investments were minimal relative to Defendants' investments. Because these two factors "relate logically to one other," the Court considers them together. McFeeley, 825 F.3d at 243.

Defendants were responsible for providing the club, stage, poles, managers, non-entertainment workers, security, advertising, maintenance, repairs, amenities, and insurance that made Plaintiffs' work possible. Defendants also set a minimum price that Plaintiffs were required to charge for dances. While dancers can increase their profit to some degree by being skilled at their work, and while dancers can independently advertise and provide similar services outside the environment of a nightclub, it is clear that Plaintiffs would not have had the same opportunity for profit absent the facility, amenities, and reputation of "the world's largest strip club." Defendants' investments made Plaintiffs' profit possible.

Defendants argue that Plaintiffs made significant investments in their own costumes, cosmetics, and travel. But there is no question that Defendants' financial investment in the business greatly exceeds Plaintiffs'. Dancers arrive at the club with nothing but their own clothes and makeup; they rely on Defendants' significant investments and resources to provide an environment in which they can profit. Dancers have no ownership interest in the club and do not pay for the club's overhead costs, advertising, employees, or other expenses. See Torres-Lopez v. May, 111 F.3d 633, 643–44 (9th Cir. 1997) (finding that this factor favored employment status where farmworkers had no ownership interest in the land and did not pay to upkeep the land, though they provided their own tools). Quite simply Plaintiffs' minimal investments do not make

their work (and profit) possible and these investments are de minimis compared to the large investment in by Defendants' in the operation of the business.

### 3. Special Skill

The Court finds that exotic dancing is unskilled work for the purposes of the economic realities test, as it "requires no great initiative, judgment, [ ] foresight, or special skill.'" Torres-Lopez v. May, 111 F.3d 633, 644 (9th Cir. 1997) (internal quotation marks and citation omitted). Defendants do not require dancers to have any dancing experience or training before working at the club. Defendants also do not require any particular educational background or skillset.

Defendants argue that dancers are most successful when they "use initiative, try to talk to a lot of people, try to talk patrons into more expensive options, and engage with customers." ECF No. 215 at 18. While the Court agrees that the job requires significant efforts and that some dancers may be more effective than others, using initiative and engaging with customers are not special skills in the sense courts typically consider in evaluating whether independent contractor status is appropriate. "Courts have [ ] consistently held that there is limited genuine skill required to be an exotic dancer." Hart v. Rick's Cabaret Int'l, Inc., 967 F. Supp. 2d 901, 920 (S.D.N.Y. 2013) (citing 5th Cir., N.D. Tex., and M.D. Fla. cases). The Fourth Circuit has stated that "even the skill displayed by the most accomplished dancers in a ballet company would hardly by itself be sufficient." McFeeley, 825 F.3d at 244.

### 4. Degree of Permanence

The Court finds that, while this factor alone favors Defendants, it is of relatively limited importance in the overall economic realities analysis. Exotic dancers like Plaintiffs often work irregularly or temporarily. "As to the permanence of the working relationship, courts have generally accorded this factor little weight in challenges brought by exotic dancers given the inherently 'itinerant' nature of their work." McFeeley, 825 F.3d at 244; see also Reich, 998 F.2d at 328–29 ("The transient nature of the work force is not enough here to remove the dancers from the protections of the FLSA. In analyzing the five factors, we must not lose sight of economic reality."). Where permanence "is the only non-regulatory factor . . . that does not support a

- 17 -

conclusion that an employment relationship existed," the Ninth Circuit has still concluded that a defendant was an employer under the FLSA. Torres-Lopez, 111 F.3d at 644. The Court finds that, given the totality of the undisputed circumstances, the impermanence of Plaintiffs' employment does not alter their status as employees.

### 5. Integral Part of Business

The Court finds that dancers' services are integral to Defendants' business for the reasons already noted and for a few additional reasons. Defendants advertise the club as the "world's largest strip club." Exotic dancers are integral to this advertised environment. Defendants argue that their business does not solely provide dancing, as they also have a comedy show, male revue, and television sports viewing events. But while Defendants proffer some other services and events, they inarguably cannot maintain their current business model without the services of dancers.

Having considered all factors discussed above, the Court concludes that Defendants were employers of Plaintiffs under the FLSA. Because it is undisputed that Defendants did not pay Plaintiffs a wage, the Court also finds that Defendants failed to pay minimum and overtime wages in accordance with the FLSA.

### c. Motion for Partial Summary Judgment (Individual Liability of Feinstein and Talla)

The Court next addresses Plaintiffs' Motion for Partial Summary Judgment on Individual Liability of Defendants Peter Feinstein and David Michael Talla. ECF No. 190. Plaintiffs seek summary judgment on the question of Feinstein's and Talla's individual liability for violations of the FLSA.

As above, the FLSA's definition of "employer" includes "any person acting directly or indirectly in the interest of an employer in relation to an employee," 29 U.S.C. § 203(d), and "is to be given an expansive interpretation," Boucher, 572 F.3d at 1090. "Where an individual exercises 'control over the nature and structure of the employment relationship,' or 'economic control' over the relationship, that individual is an employer within the meaning of the Act, and is subject to liability." Lambert v. Ackerley, 180 F.3d 997, 1012 (9th Cir. 1999). "All joint

employers are individually responsible for compliance with the FLSA." Bonnette v. California Health & Welfare Agency, 704 F.2d 1465, 1469 (9th Cir. 1983).

The Court finds that Feinstein and Talla are employers under the FLSA as a matter of law. The undisputed facts regarding Feinstein's and Talla's roles and authority show that both individuals possessed economic control over Plaintiffs. At all relevant times, Feinstein was the manager of the club and Talla was the owner of the club. Feinstein testified to being responsible for day-to-day operations at the club and to having the right to make the majority of the decisions at the club. ECF No. 192-1 at 53. Feinstein testified that he and Talla are the only two signers on Shac, LLC's bank account and that Talla signs off on the club's tax returns. Id. at 52, 53. He further testified that he and Talla jointly have the power to decide to close down the club. Id. at 51. He testified that Talla hired John Lee, the general manager who hires and oversees dancers. Id. at 53.

While Defendants concede that Feinstein has authority to conduct and is responsible for day-to-day operations at the club, they argue that he delegates this authority and tasks to lower management. The Court does not find this fact to be relevant. "'[O]perational control' need not be exercised constantly for an individual to be liable under the FLSA." Irizarry v. Catsimatidis, 722 F.3d 99, 110 (2d Cir. 2013). That an individual may have "exercised that authority only occasionally" does not alter his status as an employer. Donovan v. Janitorial Servs., Inc., 672 F.2d 528, 531 (5th Cir. 1982). The extent to which Feinstein may delegate his power as an employer does not alter the undisputed fact that he possesses it.

The Court therefore finds that Defendants Feinstein and Talla are individually liable as Plaintiffs' employers under the FLSA.

### d. Motion for Partial Summary Judgment (Willfulness and Liquidated Damages)

The Court next addresses Plaintiffs' Motion for Partial Summary Judgment on Willfulness and Liquidated Damages. ECF No. 191. Plaintiffs seek a summary judgment that Defendants' violations of the FLSA were willful. Plaintiffs further seek summary judgment that liquidated damages are available because Defendants did not act in good faith.

An employer's violation of the FLSA is willful if "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133 (1988). When a court finds that conduct violating the FLSA was willful, the FLSA's standard two-year statute of limitations is extended to a three-year period. Alvarez v. IBP, Inc., 339 F.3d 894, 908 (9th Cir. 2003), aff'd, 546 U.S. 21 (2005); 29 U.S.C. § 25(a). Liquidated damages are available for violations of the FLSA unless the employer shows "that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation" of the FLSA. 29 U.S.C. § 260.

The Court finds that Plaintiffs have not proven Defendants' willfulness or lack of good faith as a matter of law. Plaintiffs argue that Defendants evinced willfulness by failing to alter Plaintiffs' status from independent contractors to employers subsequent to the 2014 Terry decision. The Court finds that there remains a genuine dispute as to Defendants' willfulness or lack of good faith. The class includes dancers employed from November 20, 2012 onward. ECF No. 49 at 2. At the beginning of this class period, Defendants were on notice only of the Clark County District Court's 2011 determination that its dancers were not employees under Nevada law. The Nevada Supreme Court issued Terry on October 30, 2014. 336 P.3d 951 (Nev. 2014). Litigation in that case proceeded until its July 6, 2016 settlement. ECF No. 93-10. Feinstein's deposition testimony raises factual questions as to whether, and to what degree, Feinstein understood the ongoing implications of the Nevada Supreme Court's decision in light of the continued litigation and eventual settlement in that matter. ECF No. 192-1 at 55–56.

The Court therefore does not find that Defendants willfully violated the FLSA as a matter of law. The Court further does not find that liquidated damages are available to Plaintiffs as a matter of law. These disputes are reserved for trial.

### e. Motions to Compel

The Court briefly addresses Plaintiffs' Motion to Compel Deposition of Tami Cowden (ECF No. 156) and Plaintiffs' Motion to Compel Against Defendant Shac, LLC (ECF No. 159). First, Plaintiffs seek to depose Tami Cowden regarding the methodology of surveys and interviews

conducted with dancers during the period of the <u>Terry</u> litigation, regarding the oral response of dancers who declined to sign declarations, and regarding any documents, summaries, or opinion letters created by Cowden. The Court finds that this information could be relevant to the remaining question of willfulness and therefore permits the deposition of Tami Cowden. Second, Plaintiffs seek to compel production of additional documents responsive to disputed requests in Plaintiff's First Request for Production to Shac, LLC. The Court has reviewed the disputed requests and the answers provided and does not compel any additional documents at this time. The Court further declines to impose sanctions.

### f. Motion to Intervene

The Court lastly addresses Intervenor-Cross Claimants' Motion to Intervene (ECF No. 226). Intervenors, who are dancers presently working at Sapphire Gentlemen's Club, seek to represent the interests of dancers who wish to remain classified as independent contractors. They request intervention as a matter of right pursuant to Rule 24(a)(2) or alternatively, permissively under Rule 24(b).

Both intervention by right and permissive intervention require that the prospective intervenors' motion be timely. Fed. R. Civ. 24(a), (b). "Three factors should be evaluated to determine whether a motion to intervene is timely: '(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay.'" <u>California Dep't of Toxic Substances Control v. Commercial Realty Projects, Inc.</u>, 309 F.3d 1113, 1119 (9th Cir. 2002) (quoting <u>United States v. Washington</u>, 86 F.3d 1499, 1503 (9th Cir. 1996). "The district court has considerable discretion to assess timeliness." <u>Dilks v. Aloha Airlines</u>, 642 F.2d 1155, 1156 (9th Cir. 1981) (per curiam). If a motion to intervene is not timely, the Court need not consider any other factors. <u>California Dep't of Toxic Substances Control</u>, 309 F.3d at 1119.

The Court finds that permitting intervention at this time would prejudice Plaintiffs. Plaintiffs have invested considerable time and expense into discovery, which (aside from the minor outstanding issues discussed above) has been closed since October 2018. If Intervenors seek to reopen discovery, Plaintiffs will be prejudiced by the additional delays; if Intervenors rely on

Plaintiffs' discovery, Plaintiffs will be financially prejudiced, as they have borne significant costs and Intervenors have borne none. The Court is resolving dispositive motions at this time and will soon schedule this matter for trial. Moreover, counsel for Intervenors represented to the Court at the July 31, 2019 hearing that, if permitted to join the action, Intervenors would be seeking to certify a second class. The process of certifying a class can take years. The Court finds that such a delay would significantly prejudice Plaintiffs.

Finally, the Court does not find there is an adequate or sufficient basis to justify the delay in intervention in this case. The motion to intervene was filed approximately four years after this litigation was initiated and more than two years after preliminary certification. The Court is unpersuaded that the intervenors only recently learned of the nature and extent of this litigation. The Court does not find that they have been diligent. This motion is not timely for all of the reasons stated and is denied by this Court.

## IV.    CONCLUSION

**IT IS ORDERED** that Plaintiffs' Motion for Leave to File Supplemental and Recently Discovered Evidence (ECF No. 186) is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendants' Motion to Dismiss Opt-In Plaintiffs Pursuant to Rule 12(b)(1) (ECF No. 92) is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Partial Summary Judgment on Liability (ECF No. 189) and Motion for Partial Summary Judgment on Individual Liability of Defendants Peter Feinstein and David Michael Talla (ECF No. 190) are **GRANTED**, and Plaintiffs' Motion for Partial Summary Judgment on Willfulness and Liquidated Damages (ECF No. 191) is **DENIED**.

**IT IS FURTHER ORDERED** that Intervenor-Cross Claimants' Motion to Intervene (ECF No. 226) is **DENIED**.

/ / /

/ / /

/ / /

**IT IS FURTHER ORDERED** that Plaintiffs' Motion to Compel Deposition of Tami Cowden (ECF No. 156) is **GRANTED** and Plaintiffs' Motion to Compel Against Defendant Shac, LLC (ECF No. 159) is **DENIED**. Plaintiffs must conduct any deposition of Tami Cowden by September 27, 2019.

**IT IS FURTHER ORDERED** that the parties submit a Proposed Joint Pretrial Order by October 4, 2019.

DATED: <u>September 6, 2019</u>.

_____

**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**